## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MIREYA SANTILLAN,

      Plaintiff,

v.                                                                           No. CV 19-313 CG

ANDREW SAUL,
Commissioner of Social
Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Mireya Santillan's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 17), filed September 9, 2019; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 23), filed December 12, 2019; and Ms. Santillan's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 24), filed December 30, 2019.

Ms. Santillan filed applications for disability insurance benefits and supplemental security income on March 17, 2015. (Administrative Record "AR" 258, 267). In both of her applications, Ms. Santillan alleged disability beginning June 7, 2013. (AR 258, 267). Ms. Santillan claimed she was limited in her ability to work due to a back injury, depression, and anxiety. (AR 306). Ms. Santillan's applications were denied initially on July 14, 2015, and upon reconsideration on October 21, 2015. (AR 144, 152).

Ms. Santillan requested a hearing before an Administrative Law Judge ("ALJ") (AR 158-59), which was held on June 30, 2017, before ALJ Ben Ballengee. (AR 49).

ALJ Ballengee issued his decision on January 22, 2018, finding Ms. Santillan not disabled at any time between her initial filing date through the date of his decision. (AR 25). Ms. Santillan requested review by the Appeals Council, (AR 1), which was denied, (AR 1-9), making ALJ Ballengee's opinion the Commissioner's final decision for purposes of judicial review. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

Ms. Santillan, represented by her attorney Michael Armstrong, argues in her Motion that: (1) the Appeals Council erred in finding that the evidence she submitted was not new, material, and chronologically pertinent; (2) ALJ Ballengee's residual functional capacity ("RFC") determination is not based on substantial evidence; and (3) ALJ Ballengee improperly weighed the opinions of treating orthopedic specialist Terry Hansen, M.D., and independent medical examiners Juliana Garcia, D.O, Mark Crawford, M.D., and Edward Naimark, Ph.D. (Doc. 17 at 2). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the Appeals Council erred in failing to consider evidence Ms. Santillan submitted that is new, material, and chronologically pertinent, the Court finds that Ms. Santillan's Motion should be **GRANTED**, and this case **REMANDED** for further proceedings.

I. **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the

plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that [he] has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

3

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Ms. Santillan claimed she was limited in her ability to work due to a back injury, depression, and anxiety. (AR 306). At step one, ALJ Ballengee determined that Ms. Santillan had not engaged in substantial gainful activity since June 7, 2013, the alleged disability onset date. (AR 18). At step two, ALJ Ballengee found that Ms. Santillan has

---

1.  20 C.F.R. pt. 404, subpt. P, app. 1.

the following severe impairments: lumbar degenerative disc disease; depression; and anxiety disorder. *Id.* At step three, ALJ Ballengee determined that none of Ms. Santillan's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 19).

ALJ Ballengee then found that Ms. Santillan has the RFC to perform light work with the following limitations: she can never climb ramps, stairs, ladders, ropes, or scaffolds; she cannot stoop, kneel, crouch, or crawl; she may not be exposed to unprotected heights, moving mechanical parts, extreme cold, or vibration; she may only perform simple, routine tasks and make simple work-related decisions; with respect to changes in her work setting, she can adapt to occasional workplace changes that are gradually introduced. (AR 21).

In formulating Ms. Santillan's RFC, ALJ Ballengee stated that he considered Ms. Santillan's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. *Id.* In addition, ALJ Ballengee stated that he considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. *Id.* ALJ Ballengee concluded that Ms. Santillan's impairments could be expected to cause her alleged symptoms, but he found that the intensity, persistence, and limiting effects that she described were not entirely consistent with the evidence in the record. (AR 22).

Turning to the medical evidence in the record, ALJ Ballengee gave "moderate weight" to the opinion of Ms. Santillan's treating physician, Dr. Hansen, because "[a]lthough his opinion is consistent with his medical treatment records as a whole, he

5

based his opinion in part on diagnostic imaging that [was] superseded by more recent magnetic resonance imaging." (AR 24). In addition, ALJ Ballengee gave "significant weight" to the State agency physicians' assessments to the extent that they "limited [Ms. Santillan] to light exertion work with unlimited and occasional postural activities[,]" because he found the opinions were generally supported by the evidence. (AR 23-24). The ALJ explained, however, that the State agency physicians "failed to consider [Ms. Santillan's] mental impairment as severe and or assess limitations," and he gave that portion of the opinions "lesser weight." (AR 24). Next, ALJ Ballengee considered and gave "some weight" to the third-party function report submitted by MS. Santillan's daughter and legal representative, Ms. Edith Linares. *Id.* Finally, the ALJ considered Ms. Santillan's own testimony and her disability report. (AR 22-24).

At step four, ALJ Ballengee found that Ms. Santillan is unable to perform her past relevant work as a nursery school attendant. (AR 24). At step five, ALJ Ballengee noted that Ms. Santillan was 40 years old on the alleged disability onset date and was therefore classified as a younger individual in accordance with the Regulations. *Id.* ALJ Ballengee also determined that Ms. Santillan is unable to communicate in English. *Id.*

ALJ Ballengee then explained that transferability of job skills is not material to his determination of disability, because the Medical-Vocational Rules support a finding that Ms. Santillan is not disabled, regardless of whether she has transferable job skills. (AR 25). However, ALJ Ballengee found that Ms. Santillan's limitations impeded her ability to perform the full range of light work. *Id.* Therefore, ALJ Ballengee relied on the testimony of a vocational expert ("VE") to determine applicable jobs Ms. Santillan could perform in the national economy. *Id.* ALJ Ballengee noted that the VE testified at the hearing that an individual with Ms. Santillan's same age, education, work experience, and RFC could

perform the jobs of Cleaner and Polisher, Silver Wrapper, and Ticket Taker. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, ALJ Ballengee adopted the testimony of the VE and concluded that, because Ms. Santillan is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). *Id.*

**IV.    Analysis**

Ms. Santillan presents three arguments in her Motion before the Court. (Doc. 17). First, she contends the Appeals Council erroneously rejected new, material, and chronologically pertinent evidence that she submitted after ALJ Ballengee's decision. (Doc. 17 at 2). Next, she alleges ALJ Ballengee's RFC assessment is not based on substantial evidence because he did not account for her subjective allegations of pain and other symptoms. (Doc. 17 at 18). Lastly, she asserts that ALJ Ballengee improperly weighed the opinions of Dr. Hansen (her treating orthopedic specialist) and Drs. Garcia, Crawford, and Naimark (independent medical examiners). (Doc. 17 at 2).

In response, the Commissioner argues the material Ms. Santillan submitted to the Appeals Council was not relevant. (Doc. 23 at 5). The Commissioner also contends that ALJ Ballengee reasonably found that Ms. Santillan's subjective complaints were not consistent with the objective medical evidence of record. (Doc. 23 at 7). Lastly, the Commissioner asserts that ALJ Ballengee properly weighed the opinions of the four physicians. (Doc. 23 at 23).

   A. *Appeals Council Review*

After ALJ Ballengee issued his decision in January 2018, Ms. Santillan submitted additional medical records to the Appeals Council in support of her disability claim. The records included: (1) an April 25, 2018, Medical Assessment of Ability to do Work-

Related Activities (Mental) (the "Medical Assessment form") signed by John Gray, Psy. D., (AR 45-46); (2) an April 25, 2018, 12.04 Depressive, Bipolar and Related Disorders listings form signed by Dr. Gray, (AR 47); and (3) an April 25, 2018, 12.06 Anxiety and Obsessive-Compulsive Disorders listings form signed by Dr. Gray, (AR 48). Dr. Gray assessed numerous moderate limitations that would "seriously interfere[] with [Ms. Santillan's] ability to perform" certain activities.[2] (AR 45 (emphasis omitted)).

In the Appeals Council's review of the ALJ's decision, it found that the "additional evidence does not relate to the period at issue" and thus did "not affect the decision about whether [Ms. Santillan was] disabled beginning on or before January 25, 2018." (AR 2). Ms. Santillan argues that although the medical records were dated after the ALJ's January 2018 decision, they are new, material, relevant to the time period under consideration, and there is a reasonable probability that the new evidence will change the outcome of the ALJ's decision. (Doc. 17 at 15-17). The Commissioner responds that it is not reasonably probable that this evidence will change the outcome because (1) it is not clear that the limitations Dr. Gray assessed apply to Ms. Santillan's limitations before the date he signed the form, and (2) Dr. Gray's opinions are internally inconsistent. (Doc. 23 at 7). Consequently, the Commissioner contends, Dr. Gray's opinion "does not undermine the substantial evidence supporting the ALJ's decision . . . ." *Id.*

The Appeals Council must consider evidence that was not previously before the ALJ if it is "new, material, and relates to the period on or before the date of the hearing

---

2. Ms. Santillan also submitted an April 16, 2018 New Mexico Orthopaedics Order Form ordering aquatic therapy evaluation and treatment signed by Christopher Patton, D.O. (AR 42). The parties only discuss the evidence authored by Dr. Gray, however; therefore, the Court will limit its analysis to Dr. Gray's evidence.

8

decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."[3] 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Evidence submitted to the Appeals Council is considered new "if it is not duplicative or cumulative" of other evidence in the record. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quotation omitted). Evidence is chronologically pertinent when it relates to the time period on or before the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

Under the old regulations, evidence was considered material "if there [was] a reasonable *possibility* that it would have changed the outcome." *Threet*, 353 F.3d at 1191 (emphasis added) (brackets and quotation omitted). Now, a claimant must show that "there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (emphasis added). While the "reasonable probability" requirement is presented in the new regulations as a separate element for establishing Appeals Council review, courts have historically construed this clause to serve as a requirement for proving materiality. *Compare* 20 C.F.R. § 416.1470(a)(5) (2017) (requiring additional evidence to be both "material" *and* present a "reasonable probability" of changing the outcome) *with Threet*, 353 F.3d at 1191 (defining materiality as the evidence possessing "a reasonable possibility that it would have changed the outcome"). Indeed, in the District of New Mexico, this change has been interpreted to "heighten[] the claimant's burden to prove materiality . . . ." *Bisbee v. Berryhill*, No. 18-cv-0731 SMV, 2019 WL 1129459, at *3 n.5

---

3. The Social Security Administration revised these regulations on December 16, 2016, with changes effective January 17, 2017. 81 Fed. Reg. 90, 987 (Dec. 16, 2016). Thus, the revisions were effective at the time the Appeals Council issued its decision here, on February 3, 2019.

(D.N.M. Mar. 12, 2019); *see also Casias v. Saul*, No. 1:18-CV-00537 LF, 2019 WL 4013890, at *3 (D.N.M. Aug. 26, 2019) (same).

Additionally, the regulations provide that if a claimant "submit[s] additional evidence that does not relate to the period on or before the date of the [ALJ's] hearing decision . . . or the Appeals Council does not find [the claimant] had good cause for missing the deadline to submit the evidence in [§§] 404.935" and 416.1435, "the Appeals Council will send [the claimant] a notice that explains why it did not accept the additional evidence and advise [them] of [their] right to file a new application." 20 C.F.R. §§ 404.970(c), 416.1470(c).

If the Appeals Council finds that the evidence meets the applicable standards and it considers it on review, then the evidence becomes part of the Administrative Record and the Court includes it in its substantial evidence review. *See Vallejo v. Berryhill*, 849 F.3d 951, 955-56 (10th Cir. 2017); *Chambers*, 389 F.3d at 1142. If the evidence does not meet the standards and the Appeals Council declines to review it, "it plays no further role in judicial review of the Commissioner's decision." *Chambers*, 389 F.3d at 1142 (citations omitted). Finally, if the newly submitted evidence meets the applicable standards but the Appeals Council did not consider it, the case should be remanded so the Appeals Council may reevaluate the ALJ's decision in light of the complete evidence. *See id.*; *see also Casias*, 2019 WL 4013890, at *4, n.8. Whether the newly submitted evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *See Threet*, 353 F.3d at 1191; *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

### 1. *Whether the Additional Evidence is New*[4]

Ms. Santillan asserts that the forms Dr. Gray submitted are new because they did not exist at the time of the ALJ's decision, and because the record does not contain any other opinion from a medical provider who treated her for mental impairments. (Doc. 17 at 16). She also maintains that Dr. Gray reviewed records from the entire relevant period, which no other provider did. *Id.* Finally, she asserts that Dr. Gray's prescribed limitations are not duplicative, as no other provider opined the same limitations. *Id.* The Commissioner does not specifically respond to these arguments. *See* (Doc. 23 at 6-7). While the Appeals Council did not pass on the issue of whether the additional evidence was new, the Court finds that the limitations Dr. Gray prescribed are not duplicative or cumulative of other record evidence and are, thus, new evidence.

### 2. *Whether the Additional Evidence is Material*

Ms. Santillan contends that Dr. Gray's opinions are material because (1) they go to her depression and anxiety diagnoses, both issues adjudicated by ALJ Ballengee; and (2) Dr. Gray opined limitations that are more restrictive than the RFC finding. (Doc. 17 at 16). She highlights two of the moderate limitations Dr. Gray opined, which are abilities necessary even in simple, unskilled work. (Doc. 24 at 2-3) (citing *Duran v. Berryhill*, No. 18-cv-0734 SMV, 2019 WL 1992103, at *4 (D.N.M. May 6, 2019)). These include limitations in her abilities to: (1) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent

---

   4.   Ms. Santillan first argues that the Appeals Council did not reject the additional evidence for the reasons that she lacked good cause to submit it after the deadline. (Doc. 17 at 13). The Commissioner did not respond. *See* (Doc. 23). Accordingly, the Court will limit its analysis to the Appeals Council's stated reason for rejecting the additional evidence. (AR 2).

11

pace without unreasonable number and length of rest periods; and (2) accept instructions and respond appropriately to criticism from supervisors. *Id. See also* (AR 45-46).

Regardless of whether the new regulation governing materiality is understood as amending the definition of materiality or adding a separate requirement for establishing Appeals Council review, the resulting outcome in this case is the same. Principally, here, the evidence satisfies the more stringent standard of possessing a reasonable probability that it would change the outcome of the ALJ's decision, and the Appeals Council's denial of review therefore requires reversal. As a result, the Court will not attempt to reconcile the competing definitions of materiality, or whether the new regulations alter the definition of materiality as proffered by the Tenth Circuit.

In reaching this conclusion, the Court considered that unskilled work requires the basic mental abilities to: (1) "understand, carry out, and remember simple instructions"; (2) "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions"; (3) "respond appropriately to supervision, coworkers and work situations"; and (4) "deal with changes in a routine work[ ]setting." Social Security Administration Program Operations Manual System § DI 25020.010, § B(3) (available at https://secure.ssa.gov/poms.nsf/lnx/
0425020010) (last visited Jan. 21, 2020); *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015); SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996).

In *Duran*, the ALJ adopted the opinions of two physicians, both of whom opined that the plaintiff would have moderate limitations interacting with supervisors. *See Duran*, 2019 WL 1992103, at *4. While the ALJ limited the plaintiff to unskilled work, he did not include any restrictions regarding the plaintiff's ability to interact with supervisors

or explain why he omitted the limitation. *Id.* The court found that because even unskilled work requires a claimant to respond appropriately to supervisors, "the ALJ erred in failing to explain why he effectively rejected" these moderate limitations. *Id.*

Similarly, here, Dr. Gray also opined that Ms. Santillan has moderate limitations in accepting instructions and responding appropriately to supervisors. (AR 46). ALJ Ballengee did not include a limitation in Ms. Santillan's RFC regarding her ability to interact with supervisors. (AR 21). Consequently, the Court finds there is a reasonable probability that this additional evidence will affect the RFC determination.

The Commissioner does not specifically address the limitations that Dr. Gray opined. (*See* Doc. 23 at 6-7). Instead, he argues that Dr. Gray's treatment notes from this time period only address Ms. Santillan's "complaints related to her physical [condition] and her financial concerns." (Doc. 23 at 7) (citing AR 808). While this may be true, Dr. Gray's newly submitted opinion is not addressed in the RFC.

The Commissioner also contends that "Dr. Gray's opinions were internally inconsistent," as he indicated that she had moderate limitations on the Medical Assessment form and marked limitations on the 12.04 and 12.06 listings forms. *Id.* (citing AR 45-48). The Commissioner cites to *Pisciotta v. Astrue* for the proposition that "[m]edical evidence may be discounted if it is internally inconsistent." (Doc. 23 at 7) (citing 500 F.3d 1074, 1078 (10th Cir. 2007)). Ms. Santillan responds that each form has a "distinct function[]." (Doc. 24 at 4) (quoting *Finley v. Berryhill*, Civ. No. 17-698 SCY, 2019 WL 1118138, at *9 (D.N.M. Mar. 11, 2019)). The Court agrees that the 12.04 and 12.06 "listings forms are generally used to assess mental impairment for purposes of steps two (identifying severe impairments) and three (rating severity for the listing)," while the Medical Assessment form implicates "specific mental functions relevant to the

13

vocational determinations required at steps four and five." *See Finley*, 2019 WL 1118138, at *9.

The Court also notes that the definitions of a "moderate" limitation on the Medical Assessment form and that of a "marked" limitation on the listings forms are strikingly similar: on the Medical Assessment form, a moderate limitation is one "that **seriously interferes** with the individual's ability to perform the designated activity on a regular and sustained basis" (AR 46); on the listings form, a marked limitation is defined as functioning "on a sustained basis [that] is **seriously limited**" (AR 47, 48) (emphasis added).[5] Thus, the opined limitations may not be as internally inconsistent as the Commissioner maintains. Regardless, the Commissioner's arguments do not change the Court's finding that there is a reasonable probability that this additional evidence will affect the RFC determination and the outcome of Ms. Santillan's disability claim.

### 3. *Whether the Additional Evidence is Chronologically Pertinent*

The Appeals Council rejected the additional evidence on the basis that it "does not relate to the period at issue." (AR 2). The Tenth Circuit has explained that evidence submitted to the Appeals Council is chronologically pertinent when it relates to the time period on or before the ALJ's decision. *Chambers*, 389 F.3d at 1142. In addition, newly submitted evidence is chronologically pertinent if it corroborates a prior diagnosis or a claimant's hearing testimony, and the evidence need not pre-date the ALJ's decision. *Padilla v. Colvin*, 525 F. App'x. 710, 713 (10th Cir. 2013).

---

5. A "marked" limitation on the Medical Assessment form indicates "[a] severe limitation which **precludes** the individual's ability useful to perform the designated activity on a regular and sustained basis . . . ." (AR 46). This corresponds more closely to an "extreme" limitation on the listings form, which indicates that the claimant is "[n]ot able to function in this area independently, appropriately, effectively, and on a sustained basis. (AR 47, 48).

14

Ms. Santillan argues that because the Medical Assessment form directed Dr. Gray to "consider [her] medical history and the chronicity of findings as from 2013[,]" the records relate to the time period before ALJ Ballengee. (Doc. 17 at 17) (quoting AR 45) (emphasis omitted). The Commissioner disagrees and contends that this wording "does not explicitly indicate that the limitations he assessed dated back to 2013, and instead, merely asked the doctor to consider [Ms. Santillan's] history dating back to 2013." (Doc. 23 at 7).

Dr. Gray signed the three forms after ALJ Ballengee's decision. To be chronologically pertinent, these forms must either corroborate Ms. Santillan's prior diagnoses or hearing testimony, or otherwise "relate back" to the time period relevant to ALJ Ballengee's decision. *See Chambers*, 389 F.3d at 1142; *Padilla*, 525 F. App'x. at 713. All three forms relate to and corroborate Ms. Santillan's depression and anxiety diagnoses. (AR 45-48). Dr. Gray treated Ms. Santillan for both depression and anxiety during the relevant time period. *See, e.g.*, (AR 60, 633-45, 673-80, 762-93, 801-10).

Specifically, the listing forms record Dr. Gray's opinions on the diagnostic criteria Ms. Santillan exhibits related to her depression and anxiety diagnoses, as well as the severity of her functional limitations. (AR 47-48). The Medical Assessment form offers Dr. Gray's opinion on the severity of Ms. Santillan's mental limitations as they relate to specific vocational skills. (AR 45-46). It is clear that Dr. Gray considered Ms. Santillan's medical history and had the benefit of knowledge as her treating provider; thus, the Court finds that the forms sufficiently relate back to his previous records and are chronologically pertinent. Accordingly, the Appeals Council erred in finding that these three forms were not related to the relevant time period.

In sum, the Court finds that the three forms Dr. Gray signed on April 25, 2018,

qualify as new, material, and chronologically pertinent, and there is a reasonable probability that the new evidence will change the outcome of ALJ Ballengee's decision. Each document either corroborates, augments, or relates to Ms. Santillan's prior diagnoses of depression and/or anxiety. Upon remand, the Appeals Council should consider the additional evidence and determine whether ALJ Ballengee's decision is supported by substantial evidence.

## V. Conclusion

For the foregoing reasons, the Court finds that the Appeals Council erred in denying review of the newly submitted qualifying evidence authored by Dr. Gray.

**IT IS THEREFORE ORDERED** that Ms. Santillan's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 17), is **GRANTED** and this case is to be **REMANDED** for further administrative proceedings before the Appeals Council consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE